UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOSEPH F. HARBISON, III, dba
JOSEPH F. HARBISON III &
ASSOCIATES,

        Plaintiff,

  v.

AMERICAN MOTORISTS INSURANCE
COMPANY,

        Defendant.
_____/

NO. CIV-S-04-2542 FCD JFM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on cross motions for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c), filed by plaintiff, Joseph F. Harbison, III dba Joseph F. Harbison, III & Associates ("Harbison"), and defendant American Motorists Insurance Company ("AMIC").[1]

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

1

**BACKGROUND**

Following are the facts submitted to the court by the parties in a joint statement of stipulated facts.[2]

**A.   The Policy**

Joseph F. Harbison, III & Associates is the Named Insured under a lawyers professional liability insurance policy issued by American Motorist, Policy No. QJ 001620 01 (the "Policy"), for the policy period of February 15, 2003 to February 15, 2004, with limits of liability of $1,000,000 per claim and $2,000,000 in the aggregate.  (Jt. Statement of Stipulated Facts in Supp. Cross Mots. Summ. J./Summ. Adj. of Issues ("SSF") ¶ 1.)  Joseph F. Harbison is an Insured under the Policy.

Section B of the Policy, "What is Covered," provides in part:

> "Subject to all terms and conditions of this policy, we will pay on your behalf those damages and defense expenses arising out of a claim or pre-claim incident that you first become aware of and report to us in writing during the policy period provided that the claim or pre-claim Incident arises out of your acts, errors or omissions that occurred on or after the prior acts date shown in the Declarations."

(SSF ¶ 3.)

Section A of the Policy, "Definitions," provides in part:

> "Whenever used in this policy, the term:
>
> 1.   Claim means any demand received by you for money, services or any other thing of value arising out of your acts, errors or omissions in providing professional services.
> * * * *
>
> 10.  Professional services [is defined in relevant part as] services you perform:

---

[2]   The court commends the parties for collaborating to prepare a joint statement of stipulated facts to facilitate the court's resolution of this matter.

2

1   a.   For a client in your capacity as a lawyer;
    * * * *
2  (SSF ¶ 4.)

3       Section C of the Policy, "Defense and Settlement," provides
4  in part: "We will provide for a defense of claims against you
5  seeking damages. . .." (SSF ¶ 5.)

6       Section G of the Policy, "Exclusions," provides in part:

7       "This insurance does not apply to:
        * * * *
8       7.   Any claim arising out of acts, errors, or
             omissions that occurred prior to the effective date of
9            this policy if, on or prior to such date, you knew or
             had a reasonable basis to believe either that a
10           professional duty had been breached or that a claim
             would be made.
11      8.   Any claim arising out of a criminal, intentionally
             wrongful, fraudulent or malicious act or omission.
12           * * * *
        10.  Liability to others which you assume under any
13           contract or agreement."

14  (SSF ¶ 6.)

15  **B.   The Klawitter Action**

16       On or about September 2, 1998, Christopher J. Olsen
17  ("Olsen") and Kathleen Klawitter ("Klawitter") entered into a
18  written contingent fee retainer agreement whereby Klawitter
19  retained Olsen to represent her in connection with all of her
20  claims of bodily injuries and alleged damages arising out of an
21  incident on or about July 23, 1998, which occurred at or about
22  the Sebastopol Golf Course in Sebastopol, California, in exchange
23  for a certain percentage of any recovery.  (SSF ¶ 7.)

24       On or about January 13, 1999, Olsen filed an action on
25  behalf of Ms. Klawitter entitled Kathleen Klawitter v. Lee
26  Farris, et al., Case No. 220841, in California Superior Court for
27  the County of Sonoma (the "Klawitter Action"). (SSF ¶ 8.)

28       In or about April 2002, Olsen contacted Harbison to request

3

that Harbison associate into the Klawitter Action as trial counsel.  (SSF ¶ 9.)  Olsen contends that he and Harbison entered into an agreement, which provided that Harbison would associate into the Klawitter Action as co-counsel, and would act as primary trial counsel therein, in exchange for a certain portion of the attorneys' fees recovered in that action. (SSF ¶ 10.)  On or about July 31, 2002, Klawitter signed an "Authorization Pursuant to Rule 2-200 of Professional Conduct" which acknowledged and authorized an agreement between Olsen and Harbison. (SSF ¶ 11.) On or about June 25, 2002, Haribson formally associated into the Klawitter Action and became co-counsel of record for Klawitter. (SSF ¶ 12.)

On August 16, 2002, Harbison advised Olsen that Klawitter would be discharging his services in the Klawitter Action and that discharge would affect their fee agreement should Harbison be retained directly by Klawitter in the Klawitter Action. (SSF ¶ 13.)  By letter dated August 12, 2002, Klawitter terminated Olsen as her counsel in the Klawitter Action effective August 13, 2002.  (SSF ¶ 14.)  On or about August 13, 2002, Klawitter retained Harbison to solely represent her in the Klawitter Action.  (SSF ¶ 15.)

On or about August 26, 2002, Olsen filed a "Notice of Lien" in the Klawitter Action wherein Olsen claimed a lien for attorneys' fees, costs and expenses on any settlement or judgment in that action.  (SSF ¶ 16.)

In early January 2003, the Klawitter Action was settled for the sum of $775,000. (SSF ¶ 19.)  On or about January 28, 2003, Harbison sent a letter to Olsen requesting that he immediately

4

withdraw the Notice of Lien filed in the Klawitter Action. (SSF ¶ 20.) Thereafter, Olsen and Harbison exchanged letters, with Harbison generally disputing Olsen's claim of a lien on the Klawitter Action and Olsen demanding payment for expenses and fees to which he asserted he was entitled. (See SSF ¶¶ 21-26.)

On July 24, 2003, the Klawitter Action was dismissed. (SSF ¶ 27.) Neither Olsen nor Harbison have received any portion of the attorneys' fees recovered in the settlement paid in the Klawitter Action, which have been held in a trust account. (SSF ¶¶ 28-29.)

**C.   The Olsen Action**

Unbeknownst to Harbison, on or about February 3, 2003, Olsen filed an action entitled <u>Christopher J. Olsen v. Joseph F. Harbison, III, doing business as Law Offices of Joseph F. Harbison, III & Associates</u>, Ventura County Superior Court Case No. SC035315 ("the Olsen Action"), asserting claims for quantum meruit and breach of contract. (SSF ¶ 30.) Also unbeknownst to Harbison, on or about April 17, 2003, Olsen filed a First Amended Complaint in the Olsen Action, asserting causes of action for (1) quantum meruit, (2) breach of contract, (3) fraud, (4) intentional interference with contractual relationship, (5) breach of fiduciary duty, and (6) declaratory relief and imposition of constructive trust. (SSF ¶ 31.) Harbison first became aware of the Olsen Action on April 29, 2003, when a copy of the First Amended Complaint was delivered to his office. (SSF ¶ 32.)

On May 2, 2003, Harbison tendered the Olsen Action to AMIC for defense and indemnity under the Policy. (SSF ¶ 33.) On or

about July 22, 2003, AMIC advised Harbison that coverage did not exist for the Olsen Action under the Policy and that it would not provide a defense to the Olsen Action. (SSF ¶ 34.)

Harbison demurred to the First Amended Complaint, and the Court sustained without leave to amend the demurrer as to Olsen's quantum meruit cause of action. (SSF ¶ 35.) Subsequently, Olsen filed a Second Amended Complaint asserting causes of action for (1) breach of contract, (2) fraud and deceit, (3) intentional interference with contractual relationship, and (4) imposition of constructive trust. (SSF ¶ 36.)

On or about March 30, 2004, Harbison forwarded the Second Amended Complaint in the Olsen Action to AMIC and again requested defense and indemnity under the Policy. (SSF ¶ 37.) On or about July 23, 2004, AMIC denied coverage.[3] (SSF ¶ 39.)

On December 1, 2004, Harbison filed a complaint in this court against AMIC, in which he asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. On February 4, 2005, parties filed a Joint Status Report in which they notified the court of

---

[3] AMIC provided the following grounds for denial of coverage: (a) the Olsen Action seeks the return of legal fees, costs and expenses from Harbison, which do not constitute covered damages as defined by the Policy; (b) the Olsen Action seeks punitive damages, which do not constitute covered damages as defined by the Policy; (c) the Policy excludes coverage for any claim arising out of an intentionally wrongful, fraudulent or malicious act or omission, and the Olsen Action seeks to hold Harbison liable for intentionally wrongful, fraudulent and malicious acts; (d) business disputes between lawyers over fees do not constitute the rendering of "professional services" as defined by the Policy; (e) the claim was not first made and reported to AMIC during the policy period; and (f) prior to the effective date of the Policy, Harbison had a reasonable basis to believe that a claim would be made against him.

6

their intent to file cross motions for partial summary judgment on the issue of AMIC's duty to defend Harbison in the Olsen Action. The court subsequently set a briefing schedule for the motions, which both parties filed on May 25, 2005.

## **STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a

finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

Parties ask the court to adjudicate whether AMIC has a duty to defend Harbison in the Olsen Action. "An insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the *potential* of liability under the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276-77 (1966) (emphasis added). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).

> To prevail [on a motion for summary judgment], the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will

8

> fall within the scope of the coverage, therefore add no weight to the scales.

Montrose Chem. Corp. of Cal. v. Superior Court, 6 Cal. 4th 287, 300 (1993).

> The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal the possibility that the claim may be covered by the policy.

Quan v. Truck Ins. Exch., 67 Cal. App. 4th 583, 591 (1998) (quoting Gray, 65 Cal. 2d at 276). "[T]he duty to defend is determined by the information possessed by the insurer at the time it refuses to defend, not by information subsequently obtained." Amato v. Mercury Cas. Co. ("Amato I), 18 Cal. App. 4th 1784, 1787 (1993).

AMIC contends that it has no duty to defend because the Olsen Action is not covered and/or is expressly excluded by the Policy. Specifically, AMIC argues that (1) the Olsen Action did not arise out of an act, error or omission in providing professional services, (2) Harbison knew or had reason to know Olsen would make a claim against him prior to the effective date of the policy, (3) the damages sought in the Olsen Action are not covered by the policy, and (4) the Policy expressly excludes coverage for the Olsen's claims. In response, Harbison contends that AMIC has a duty to defend because there is a potential for coverage under the Policy.

/////
/////
/////

## I.   Act, Error or Omission in Providing Professional Services

Initially, AMIC contends that the Olsen Action is not covered under the Policy language, which defines a covered claim as "any demand received by you for money, services or any other thing of value arising out of your acts, errors or omissions in providing professional services." (SSF ¶ 3.) Professional Services is defined, in relevant part, as "services you perform: a.  For a client in your capacity as a lawyer. . .." (SSF ¶ 4.) According to AMIC, the Olsen Action is nothing more than a fee dispute between two lawyers, and thus does not arise out of an "act, error or omission in providing professional services." Harbison concedes that the contract claims in the Olsen Action would not, standing alone, be covered under the Policy. However, Harbison contends that the tort claims asserted in the Olsen Action "arise out of an act error or omission in providing professional services" because they are connected to his rendering of professional services to Klawitter. (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 9.)

The California appellate court addressed a similar question in Transamerica Ins. Co. v. Sayble, 193 Cal. App. 3d 1562 (1987). In Sayble, a malpractice insurer refused to defend its insured attorney in an action filed by the attorney's former partner alleging mismanagement of the law firm and refusal to pay commissions. Notably, the complaint also alleged that the attorney made defamatory statements to clients regarding his former partner. Id. at 1564. The operative insurance policies provided for coverage for damages "incurred because of 'any act,

10

error or omission in professional services rendered or that should have been rendered.'" Id. at 1566.  The lower court granted summary judgment in favor of the insurer on the grounds that the policies did not cover defense of litigation arising out of business disputes.  The appellate court affirmed, holding the "two insurance policies are malpractice policies.  Thus, there must be malpractice if professional liability coverage is to apply."  Id. at 1569.

Following the reasoning employed in Sayble, the court concludes that the Olsen Action does not "arise out of an act error or omission in providing professional services." As in Sayble, the Policy at issue here covers malpractice by an attorney, and the Olsen Action indisputably is not one for malpractice.  Rather it is a claim for damages arising out of a fee dispute between two attorneys.

Harbison's contrary arguments are unavailing.  While Harbison is correct that the court must interpret the Policy language expansively in favor of coverage, such interpretation is nonetheless limited by the plain and ordinary meaning of the language itself and the context in which the Policy is written. See Waller v. Truck Ins. Exch. Inc., 11 Cal. 4th 1, 18 (Cal. 1995) ("In giving [policy] language its plain and ordinary meaning, it must be read in the context of the risk assumed and the circumstances of the case, within the structure of the entire policy as a whole.")  In this case, the pertinent language, which covers "demands for money . . . arising out of your acts, errors, or omissions in providing professional services," when read in context as part of a malpractice insurance policy, cannot be

11

interpreted so broadly as to encompass *any conduct engaged in while* rendering professional services.  (See Pl.'s Mem. at 11.) At a minimum, the language connotes a causal, rather than merely temporal, relationship between the claim and the rendering of professional services.

Moreover, the court rejects plaintiff's related argument that the Policy covers the Olsen Action because some of the conduct alleged therein – specifically Harbison encouraging Klawitter to fire Olsen – also constituted a violation of Harbison's ethical duties to Klawitter.  Even if a claim *by Klawitter* would be covered under the Policy, it does not follow that a claim by Olsen, who is differently situated, also would be covered.  Klawitter was Harbison's client, and as such, would have standing to assert a malpractice claim against Harbison.  By contrast, Olsen is not Harbison's client, and neither has asserted, nor could assert, a malpractice claim against Harbison.

In summary, the court concludes that AMIC has met its burden to demonstrate there is no potential for coverage under the Policy because the Olsen Action does not "arise out of an act, error or omission in rendering professional services."  As a result, AMIC has no duty to defend Harbison in the Olsen Action.[4]

---

[4] The remaining two issues, AMIC's duty to indemnify and breach of the covenant of good faith and fair dealing, are resolved by this court's finding that AMIC has no duty to defend. See Anthem Electronics, Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1054 n.2 (9th Cir. 2002) ("Because the duty to defend is broader than the duty to indemnify, summary judgment for the insurers on the former necessarily includes the latter."); Waller v. Truck Ins. Exch. Inc., 11 Cal. 4th 1, 36 (1995) ("It is clear that if there is no potential for coverage, and hence no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship

12

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.  The clerk is instructed to close the file.

IT IS SO ORDERED.

Dated: July 12, 2005

                                        /s/ Frank C. Damrell Jr.
                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE

---

between the insurer and insured.") As a result, summary judgment is appropriate as to all claims.

13